The opinion of the Court, was delivered by
IIoiinblower, C. J.
The object of the Certiorari in this ease is to have reviewed and set aside an order or proceeding of the Orphans’ Court of May Term 1836 as illegal and erroneous.
1st. Because the Orphans’ Court, in this case, have no authority finally to settle and determine who are, and who are not creditors, nor to adjust and establish the amount of their respective claims, or to decree a dividend thereupon.
II. dly. If they have such power and authority, the claims of Pettit, as a creditor, were not supported by legal and competent evidence, and
III. dly, Because the claims of Pettit are barred by the equity of the statute of limitations.
1st. Have the Orphans’ Court any authority, in this case, to decide who are creditors; to settle the amount of their claims, and decree a distribution ?
That the Orphans’ Court have any such power, except in the ease of insolvent estates, is not pretended. Inasmuch then, as there is no evidence before us, that the estate of Basset was insolvent, or was ever declared to be so, by any judicial decree or sentence, wc might at once dispose of the case upon that ground, and reverse the order of January Term 1836. But as it may be useful to the parties to know what their rights are in this case, 1 *424 will consider what the powers and duties of the Orphans’ Court were, in relation to the settlement of this estate.
The earliest legislation in this State, by which the English rule for the administration of estates, was broken in upon, was by the act of the 13th of June 1799, entitled “an act for the distribution of the estates of persons who die, not leaving sufficient property to pay all their just debts. {Pat. Rev. 435.) By the 1st section of that act, it is enacted, that all the estate, real and personal of persons dying thereafter, when insufficient to pay all their debts, shall be distributed among the creditors in proportion ‘to the sums due to them respectively, excepting the physician’s bill during the last sickness, funeral expenses, and judgments of record, entered during the life time of the decedent, which are to be first paid. This statute introduced an entirely new rule; abolishing the distribution between debts by specialty and by simple contract, and taking away the priority of judgments obtained against the representatives. But while it did this, it did not direct any declaration of insolvency, under oath, or otherwise, by the Executors, nor any adjudication to that effect, by the Court, nor did it prescribe any mode for ascertaining who wore creditors, or for establishing their respective claims. The Executor or Administrator was to proceed at his peril; and in order to allow him time to find out the condition of the estate, and the debts to be paid, he was exempted from prosecution, for six months after the death of the testator or intestate, unless u'pon a suggestion of fraud, or for the discovery of assets, or for debts preferred by that act.
The settlement of the estate in question, was commenced under the provisions of this act and the pre-existing acts then in force, regulating the administration of estates. Accordingly we find the Administrators in the Term of August 1818, applying for and obtaining an order to limit creditors, under the fourteenth section of the act, for the limitation of actions, passed the seventh of February 1799. Pat. Rev. 352, & Rev. Laws, 412: and also rules to shew cause, and subsequently two orders for the sale of ’ real estate, under the provisions of the nineteenth section of the act, making lands liable to be sold for the payment of debts, passed the 16th of February, 1799, Pat. Rev. 369 & Rev. Laws 430, 435.
*425 The administration and settlement of this estate must then be continued and closed up under the provisions of those acts unless some subsequent legislation by retrospective enactments, has altered the rule.
The law remained as above stated until the nineteenth of February 1819, when another act was passed ooncerhing the estates of persons who die insolvent; the general provisions of which are, that the Orphans’ Court- upon the application of Executors or A,dminístralors shall appoint a certain time, not less than six months, nor more than two years, within which, creditors shall exhibit their claims: that whenever the estate of any decedent, shall be likely to prove insolvent, the Executors or Administrators after the expiration of the time limited as aforesaid, shall make a settlement of their accounts, giving notice thereof, and of the insolvency of the estate, by public advertisements; and shall also render a statement of the claims exhibited against the estate; and if no objections are made to the accounts so rendered, the Court, after deducting preferred debts, are to “ direct a distribution ” of the balance among the creditors, in proportion to their demands. That if exceptions are made to the accounts of the Executors or Administrators, the Court may hear and determine the same, or refer the matter to Auditors, whose report shall be conclusive: and if exceptions are made to the demands of any of the creditors, the Court shall proceed to adjust the same, unless the creditor elects to prosecute his claim by suit at law or in equity: and when the amount of the estate aud the claims against it are thus ascertained, the Court shall “ proceed to a distribution ” as before directed. This act after some other provisions not now material to be noticed, repeals so much of the twenty-fourth section of the act of the 18th of February 1799, {Rev. Laws, 430, 436,) as prohibits the sale of real estate until the whole of the personal assets have been applied to tbe payment of debts; and so much of the nineteenth section of the same act, as limits the Court to three months upon a rule to show cause why lands should not be sold; and so much of all other acts as came within the purview of that act.
It is observable that the only material alteration made by this law, was a provision for adjusting the claims of creditors, when disputed, and authorizing the Court to decree joro rata distribu *426 tion. How that was to be done, whether by directing the Executors or Administrators to make such dividend, or by specifically decreeing so much to each creditor by name, was a question never settled by any decision of this Court, so far as I know. It did not require any declaration of insolvency under oalh by the Executor or Administrator, nor any judicial determination that the estate was insolvent, nor did it require creditors to exhibit their claims under oath; but seems to leave it to the Executor or Administrator to proceed as in case of insolvency or not, at his own peril and according to the best of his judgment.
The last act, however, did not continue long in force, for by an act, passed the following year, viz. on the 12th of June 1820, Rev. Laws, 766, it was absolutely repealed, as was also the act of the 13th of June 1799, Pat. R. 435; but the repealing clause expressly declares, that such repeal shall “in no wise affect or extend to any proceedings then pending, or rights acquired under the repealed acts.”
From this review of the several statutes upon this subject, it appears to me that the Orphans’ Court, in the case now under consideration, have no power to decide, who are, or who are not creditors; nor to adjust and determine the sums due to such as are creditors, and consequently, no authority to make a specific decree, fixing the amount to be paid to them respectively by name, unless the Administrator after the passage of the act of the 19th of February 1819, treated the estate as insolvent and proceeded according to the directions of that act. That act it will be observed was passed only about seven months after Administration granted; it was general in its terms, not limited to the settlement of the estates of decedents who might thereafter die insolvent, nor in any manner inconsistent with the act of 1799 : but on the contrary it adopted the principles of a pro rata distribution first introduced by that act: Pat. Rev. 435, and only prescribed the mode of carrying out those principles in detail. Immediately therefore upon, its passage, the act of the 19th of February 1819, became a rule for the government of Courts and of Executors and Administrators in the settlement of all insolvent estates, except so far as such estates had been previously administered under existing laws.
Hence the enquiry arises, did these administrators after the *427 passage of the act of 1819, treat this estate, as an insolvent one? Did they after the time limited for creditors to present their claims, give public notice of the insolvency of the estate, and of their intention to exhibit their accounts, and a statement of all 'the demands of creditors against the estate, as required to be done by the second section of that act ? If any such a list of creditors were presented to the Court, were exceptions taken to any of them ? Or did the Court ever pass upon those claims in any way so as to establish the amount of debts, and settle the question, whether the estate was insolvent or not ? Upon looking into the documents, I cannot discover that either the Court, or the Administrators ever, in any way treated this estate as insolvent, or ever supposed it to be so; nor that it was so in point of fact. On the contrary, upon the very face of the papers exhibited with the Certiorari, it appears that on the twenty-fourth of April 1822, there was a balance in the hands of the Administrators “ to be disposed of according to law,” which was more than sufficient to satisfy all the debts due from the estate. There was on that day, a balance in hand, of two thousand six hundred and twenty-six dollars and ninety-one cents ; and the whole amount of claims, as appears by a certified copy of the list of creditors, filed by the Administrators, was only two thousand two hundred and fifty-nine dollars and fourteen cents.
I cannot therefore discover upon what grounds this estate could be considered or treated as an insolvent one; and if not an insolvent estate, the Orphans’ Court have no power to settle disputed claims upon it; to determine who are creditors and who are not, nor to adjust the amounts due to such as are; and consequently no authority to decree a dividend or distribution among creditors.
There never was any thing in this case, to prevent Pettit, or any other person claiming to be a creditor, from suing at law lor their debts, at any time after six months subsequent to the death of the Intestate. Nor is there any thing to prevent such suit now, unless it is the lapse of time that has intervened ; but if Pettit is barred by the statute of limitations, it has been his own fault, and we cannot relieve him in this way.
The history of this case, presents another painful illustration of the inefficiency of our Orphans’ Court system, and exhibits the *428 Administrators as having acted in a very dilatory and unfaithful manner. They were prompt in getting orders for the sale of real estate; but from August Term 1819, when they got the last decree for sale, they did nothing, till cited by a creditor to account in August Term 1820, nor did they in fact exhibit any account until February Term 1821. In May Term 1822, that account was reported by Auditors, shewing a balance in their hands of two thousand six hundred and twenty-six dollars and ninety one cents, after paying all preferred debts, charges and commissions; and yet Pettit, if he is a creditor, (and they reported him as such) remains unpaid. These remarks are founded upon the state of the case as it stands before the Court; and may therefore not be just, upon a true state of the facts. The Administrators may have applied the whole of that balance to the payment of debts, or distributed it amongst the next of kin. If they have done so, they owe it to themselves and to the public to account for the money before the Orphans’ Court, and close up the concern.
The view I have taken of the case, makes it unnecessary to examine the other points raised on the argument. The order for distribution among-creditors, must be reversed on the ground that in this case, the Court had no power to make such an order.
Fobd, White, and Dayton, Justices, concurred.

Deoree of Dividend and Distribution Reversed.